■ NIKKO M. CARMAN, Appellant-Respondent, v DONALD W. CARMAN, JR., Respondent-Appellant. [802 NYS2d 558]—

Kane, J. Cross appeals from a judgment of the Supreme Court (McNamara, J.), entered May 12, 2004 in Albany County, ordering, inter alia, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in August 1978 and have three children, two of whom are minors. In July 2001, plaintiff filed this divorce action. Following a bench trial and stipulation on certain issues, Supreme Court issued a decision and judgment which awarded plaintiff a divorce, granted joint legal custody as stipulated with primary physical custody to plaintiff, provided child support to plaintiff, awarded plaintiff maintenance of $1,000 per month for 30 months, determined that 20% of the value of defendant's license as a certified public accountant (hereinafter CPA) was marital property, valued defendant's interest in his business and equally divided the marital property between the parties. Both parties appeal.

Supreme Court appropriately determined defendant's child

support obligation with regard to combined parental income in excess of $80,000. Although the Child Support Standards Act does not provide for nor permit the inclusion or deduction of a distributive award when calculating parental income (*see Holterman v Holterman*, 3 NY3d 1, 11 [2004]; Domestic Relations Law § 240 [1-b]), because "a distributive award to be paid by one parent to the other pertains to the financial resources of the parties," it is an appropriate factor to be considered by the court when determining the appropriate amount of child support for income in excess of $80,000 (*Holterman v Holterman, supra* at 14; *see* Domestic Relations Law § 240 [1-b] [c] [3]; [f] [1], [10]). Based on the parties' modest predivorce standard of living, the lack of any special needs of the children, plaintiff's ability to return to work now that the children are in school, and the substantial assets available to plaintiff through distributive awards, the court did not abuse its discretion when it determined that only half of the combined parental income over $80,000 should be utilized in calculating the parties' child support obligations.

Supreme Court properly considered 20% of defendant's CPA license as marital property. Despite defendant's disagreements with some of the bases for the joint forensic accounting expert's opinion, that opinion was supported by the record. Before the marriage, defendant completed a Bachelor's degree and almost one year of the required two years of practice. During the marriage, he finished the remaining practice period, took an exam preparation course and passed all portions of the CPA exam. The court reasonably accepted the expert's 20% figure, representing one sixth of defendant's education and practical experience with a slight increase for exam preparation and successful completion, as the marital portion of defendant's enhanced earning capacity related to his CPA license.

While we agree with Supreme Court's determination of the marital portion of defendant's CPA license, the court erred in the distribution of that property. Although a portion of defendant's CPA license is marital, equitable distribution does not require an equal division of marital property (*see Farrell v Cleary-Farrell*, 306 AD2d 597, 599 [2003]). Plaintiff, as the nontitled spouse seeking a share of enhanced earning capacity, bore the burden of demonstrating that she made a substantial contribution to defendant's acquisition of the license (*see id.* at 599; *Brough v Brough*, 285 AD2d 913, 914 [2001]). "Where only modest contributions are made by the nontitled spouse toward the other spouse's attainment of a degree or professional license, and the attainment is more directly the result of the titled

spouse's own ability, tenacity, perseverance and hard work, it is appropriate for courts to limit the distributed amount of that enhanced earning capacity" (*Farrell v Cleary-Farrell, supra* at 599 [citations omitted]; *see Corasanti v Corasanti*, 296 AD2d 831, 832 [2002]; *Brough v Brough, supra* at 916). Here, defendant obtained his college degree and completed almost half of his two-year practice requirement before the marriage. He completed the second year of practice during the marriage, but that experience was earned through a job where he was gainfully employed, earning money to support the parties as a couple. The exam preparatory course lasted less than two months and was a review of his college work. During this time, plaintiff was also employed full time. While plaintiff performed household chores and provided an environment for defendant to study, this can be seen more as overall contributions to the marriage rather than an additional effort to support defendant in obtaining his license (*see Gandhi v Gandhi*, 283 AD2d 782, 785 [2001]). As plaintiff's own testimony indicated that she did not substantially alter her schedule due to defendant's studying for his CPA exam and licensure, it would be inequitable to award plaintiff half of defendant's enhanced earning capacity related to his CPA license (*see Farrell v Cleary-Farrell, supra* at 599; *Gandhi v Gandhi, supra*). Based on plaintiff's limited contribution to defendant's acquisition of this asset, her equitable share of the marital portion of defendant's CPA license is 20%.

Considering all of the appropriate factors, Supreme Court properly divided the remaining marital assets equally, including defendant's interest in his business (*see* Domestic Relations Law § 236 [B] [5]). The marriage was of long duration, the parties are relatively young, both parties have college degrees, they had no assets at the time of the marriage, plaintiff has primary physical custody of the two minor children, and both parties worked initially but plaintiff stayed home to care for the children after the youngest child was born. Under the circumstances, the court did not abuse its discretion in equally distributing the parties' remaining marital assets (*see Owens v Owens*, 288 AD2d 782, 783 [2001]).

The increase in value of defendant's annuity account was correctly classified as marital property. Defendant used his financial planning and accounting expertise to manage that account, even if only a few times a year, directly and actively contributing to the appreciation in value of that account (*see Spencer v Spencer*, 230 AD2d 645, 647 [1996]). Accordingly, under the circumstances, plaintiff was entitled to equitable distribution of the account's increase in value (*see Miller v Miller*, 4 AD3d 718, 719

[2004]; *Spencer v Spencer, supra* at 647). Contrary to defendant's claim that his separate contribution to the account was $15,000, the record only established an initial contribution of $5,000, as found by Supreme Court.

Regarding defendant's claim that he is entitled to a credit for moneys that plaintiff borrowed against the home equity line of credit after the commencement of this divorce action, plaintiff testified that this money was not for personal expenses but was expended on marital expenses such as the children and marital residence. Because defendant was ordered to pay retroactive child support and maintenance, which presumably would have been applied toward these marital expenses, he is entitled to a credit for half the amount of funds borrowed from the home equity line of credit.

Supreme Court failed to consider all of the tax impacts to the parties. Courts are required to consider the tax consequences in fashioning equitable distribution (*see* Domestic Relations Law § 236 [B] [5] [d] [10]), but distributive awards may not include payments which are taxable as ordinary income to the recipient (*see* Domestic Relations Law § 236 [B] [1] [b]). While Supreme Court correctly ordered distribution of a portion of defendant's year-end bonus for the year of commencement (*see Hartog v Hartog*, 85 NY2d 36, 49 [1995]), we agree with defendant that he should have been ordered to pay plaintiff the after-tax amount of her portion, or $20,790, because he already paid the taxes on that bonus. Similarly, the court did not address the tax consequences associated with the distribution of defendant's business, despite statements in the expert's report noting that, depending on the method of distribution, it may be appropriate to discount the business's value 25% to 40% due to taxes. We remit for the court to consider the tax impact of its awards, as well as to reevaluate the equitable distribution of assets in light of our modification of Supreme Court's distribution.

Supreme Court's maintenance award was appropriate. The amount and duration of maintenance are left mainly to the trial court's discretion, as long as the court considers the statutory factors and sets forth bases for its conclusions (*see Majekodunmi v Majekodunmi*, 309 AD2d 1024, 1025 [2003]; *Moschetti v Moschetti*, 277 AD2d 838, 838 [2000]; Domestic Relations Law § 236 [B] [6] [a], [b]). The predivorce standard of living is a mandatory component (*see Hartog v Hartog, supra* at 50-51). "[M]aintenance should be designed to provide temporary support while the recipient develops the skills or experience necessary to become self-sufficient" (*Semans v Semans*, 199 AD2d 790, 791 [1993], *lv denied* 83 NY2d 758 [1994]; *see* Domestic Relations

Law § 236 [B] [6] [a] [4]; *Van Dyke v Van Dyke*, 273 AD2d 589, 594 [2000]).

The record here supports Supreme Court's finding that the parties lived a modest lifestyle despite defendant's substantial earnings (*compare Majekodunmi v Majekodunmi, supra* at 1025). The court acknowledged that defendant earns considerably more than plaintiff, probably more than she will ever earn. But plaintiff is healthy, relatively young, obtained a Bachelor's degree, worked full time in the past, runs her own part-time bookkeeping business as well as working part time for another business, received a sizeable distributive award, and could return to full-time employment because the children are in school and the youngest is 10 years old. As plaintiff did not entirely sacrifice her employment opportunities during the marriage and is capable of finding gainful employment, $1,000 is a fair amount and 30 months is a reasonable time period to allow her to reestablish her earning power (*see Van Dyke v Van Dyke, supra* at 594). Based on the expert's testimony and report, it appears that the court's maintenance award was partly based on defendant's untapped earnings, namely his income that remained after subtracting the amount attributable to his CPA license (*see Holterman v Holterman*, 3 NY3d 1, 13 n 9 [2004], *supra*; *Corasanti v Corasanti*, 296 AD2d 831, 833[2002], *supra*). The amount and duration of the award are not excessive considering defendant's remaining assets (*see* Domestic Relations Law § 236 [B] [6] [a] [1]).

While Supreme Court correctly determined that plaintiff could afford her own counsel fees, based on her distributive award (*see Newton v Newton*, 246 AD2d 765, 768 [1998], *lv denied* 91 NY2d 813 [1998]), plaintiff also should have equally shared the joint costs of litigation, such as fees for the parties' jointly retained expert and appraiser.

The parties' remaining contentions have been reviewed and need not be addressed.

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) reducing the amount distributed to plaintiff from defendant's 2001 bonus to $20,790, (2) reducing the distribution to plaintiff of the value of defendant's enhanced earning capacity related to his certified public accountant license to $19,720, (3) crediting defendant with $8,083.24 from the home equity line of credit, and (4) ordering plaintiff to pay $4,105.50 toward the joint litigation expenses; matter remitted to the Supreme Court to reevaluate equitable distribution and the tax impact of the award; and, as so modified, affirmed.